# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**EQUILLA SLACK,**
        **Plaintiff,**

**v.**                               **No:  3:07cv16/RV/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
        **Defendant.**

---

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Slack's application for Supplemental Security Income (SSI) benefits under Title XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits claiming an onset of disability date of June 18, 1993.  The application was denied initially and on reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on November 18, 2005 at which plaintiff was represented by counsel and testified.  A vocational expert also testified.  The ALJ rendered an unfavorable decision on July 26, 2006 (tr. 11-23) and the Appeals Council declined review (tr. 4-6), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe impairments of depressive/pain disorder versus adjustment reaction and presumed degenerative disc disease of the low back; that she did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in Subpart P, Appendix 1, Regulations No. 4; that she had the residual functional capacity for at least light exertion with non-exertional posterial restrictions of occasional climbing, balancing, stooping, kneeling, crouching and crawling, and additionally had the mental residual functional capacity for at least simple and repetitive unskilled work tasks; that she was able to perform her past relevant work as a cleaner and assembler; and that she was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's

decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles.  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).  Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      **Does the individual have any impairments which prevent past relevant work?**

5.      **Do the individual's impairments prevent any other work?**

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S TESTIMONY

At the hearing before the ALJ plaintiff testified that she suffered a job related injury to her back in 1992.  She was treated by Dr. Szmurlo until he retired, and was then followed by Dr. Maddox.  Her persistent and current problems are in her neck, back and legs.  She cannot bend and cannot lift her arms high enough to comb her hair.  The pain radiates from her low back into her legs, and at times she cannot feel her legs at all.  She can walk no more than half a block and her right knee sometimes gives out and causes her to stumble.  She can stand for no more than 45 minutes and sit for no more than 30.  Her doctor told her she could use a cane if she felt she needed it.  On an average day her back pain is seven out of ten.  She has no grip strength, and drops things all the time.  She does no chores around the house; her daughter has to help her do "everything."  She gets headaches that are relieved with lying down for about twenty minutes.  She has difficulty sleeping, and never gets a full night's rest.  She watches TV but the pain makes it hard for her to concentrate on what is watching.  Her medication makes her drowsy, she fidgets, and cannot

think straight.  She drives occasionally, but only when there is no one else to drive her (tr. 289-299).

## PLAINTIFF'S MEDICAL HISTORY

The medical documentation in the administrative file begins on January 23, 2001.  The period between the plaintiff's alleged onset date of June 18, 1993 and her first recorded doctor visit is blank.  Although the ALJ's decision does not make it clear, it is presumed that this is based on the ALJ's finding that an earlier application dated August 22, 2003 was denied and became final such that *res judicata* applied until the time of her application of November 18, 2003.  In order to be eligible for SSI benefits, a claimant must show that she was disabled while her application was pending, meaning she must prove that she was disabled on and after November 18, 2003.  42 U.S.C. §  1382c; 20 C.F.R. § § 416.330 and 416.335.  For that reason, the majority of the following medical summary is limited to a period after November 18, 2003.

Plaintiff's regular physician was Dr. Maddux, and his treatment records cover the period from January 2001 to September 2004.  Dr. Maddux treated plaintiff generally for simple medical problems (tr. 228-237).

Plaintiff had extensive treatment by Peter Szmurlo, M.D., a psychiatrist and pain specialist.  The earliest record from Dr. Szmurlo is dated April 12, 2001 and plaintiff's last visit to Dr. Szmurlo before November 18, 2003 took place on October 6, 2003.  During that time, plaintiff was treated with a variety of pain medications under controlled circumstances to find the mix that gave her the greatest relief.  In March 2003 she was complaining that morphine sulphate made her drowsy and Dr. Szmurlo substituted Lortab (tr. 179).  Thereafter, she reported that she was doing much better, that she had no side effects on her medication, and that she was doing well overall (tr. 176-179).  On the last visit before the res judicata cut off date, plaintiff indicated that she was responding adequately to her medications.  She was not

feeling depressed, came to her appointments in a timely fashion, was not misusing her medication and her pain levels were for the most part reduced to an acceptable degree.  She was generally pleased with the outcome of her treatment, had increased her level of activity and was stable (tr. 175).

After the res judicata cut off date, she reported to Dr. Szmurlo that she was either doing well or quite well, and saw him last on February 6, 2004 (tr. 173-174). On February 25, 2004, Dr. Szmurlo filled out a form in which he opined, among other things, that plaintiff did not have the capability of sustaining work activity for eight hours a day, five days a week, because of her reaction to stress and because she would be unable to show up for work reliably (tr. 171-172).

Although Dr. Maddux saw plaintiff primarily for general medical problems, he did do a physical examination concerning her back on May 20, 2004.  He noted minimal lumbosacral tenderness, pain in the back on leg raising to 75° on the left, and deep tendon reflexes were equal although she had problems with her right knee. Dr. Maddux's impression was degenerative joint disease of the left knee and chronic back pain (tr. 230).  The last entry by Dr. Maddux was from a visit on September 27, 2004 in which plaintiff reported that she had fallen because of hurricane damage and had pain in her lower back and had hurt her right knee.  Dr. Maddux's impression was a hematoma on the right leg and chronic low back pain with acute exacerbation (tr. 228).

Beginning in October 2004 and continuing through July 2005 plaintiff was seen at the Santa Rosa County Clinic (tr. 264-279).  Her treatment there was primarily for general medical conditions.  However, on May 12, 2005, an examination of her back revealed tenderness to percussion over the sacrum, negative straight leg raising, and symmetrical deep tendon reflexes with dorsiflexion intact.  The clinic doctor's impression was mechanical low back pain (tr. 267).  Shortly thereafter an x-ray of the lumbar spine dated October 27, 2004 showed a questionable left uretal calculus (kidney stone) and degenerative changes at the L5-S1 articulation.  The

lumbar spine was otherwise normal.

Plaintiff was also seen in consultation by Sal Vernali, M.D., a pulmonologist. Examination of the spine revealed no muscle spasm.  Straight leg raising was positive at 10˚ with pain reported in the lower back, and plaintiff was able to bend forward and touch her thighs with pain.  Muscle strength was normal throughout and all tested reflexes were intact.  Touch, pinprick and vibration were normal as was coordination.  However, her gait was abnormal in that she used a cane to assist in walking.

## DISCUSSION

The plaintiff argues that the ALJ erred in failing properly to consider her subjective complaints of pain, in ignoring vocational expert testimony, and in failing to consider her non-exertional impairment caused by the side effects of her medications.  She contends that she was disabled from her onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

Although plaintiff presents three distinct claims, they all revolve around the issue of her subjective complaints of pain and the ALJ's evaluation of her credibility. As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has

articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005).   However, the presence or absence of

---

[1]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

evidence to support symptoms of the severity claimed is a factor that can be considered.  *Marbury*, 957 at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054.   Where he fails to do so, the Eleventh Circuit has stated that it would thus hold as a matter of law that the testimony is accepted as true.  *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms

and complaints").[2]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here the ALJ found that plaintiff's allegations concerning the intensity, duration and limiting effects of her symptoms were not entirely credible (tr. 20).  In support of this finding the ALJ noted that (1) the medical record revealed no indication of permanent restrictive limitations, (2) plaintiff's medical care had been conservative and routine, (3) plaintiff's treatment had been generally successful in controlling her symptoms, (4) plaintiff's characterization of treatment by her physicians was not borne out by the medical record, and (5) plaintiff's claimed limitations of daily activities were not supported by the medical record (tr. 20-21).

The ALJ's determination concerning the plaintiff's credibility was supported by substantial record evidence.  Indeed, a review of the plaintiff's testimony at the hearing compared to the medical record would logically raise a suspicion that the

---

[2]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

plaintiff was not the same person she presented to her treating physicians.  That is, how she described herself to her doctors was vastly different from how she described herself to the ALJ.  The ALJ had every reason to question her credibility, and the record supports his decision.

Since plaintiff's argument concerning the vocational expert testimony relies on this court finding that the ALJ erred in his evaluation of plaintiff's subjective complaints of pain, that argument must fail.  Likewise, plaintiff's argument that the side effects of her medication were not considered must fail.  The only discussion of the side effects of plaintiff's medication is in Dr. Szmurlo's records, and it is clear from those records that when he change plaintiff's medication form morphine sulfate to Lortab, the problem with drowsiness went away (tr. 173-179).  Plaintiff has failed to show that the ALJ erred in any respect, and she is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 3rd day of December, 2007.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**